*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

TARONE DEVON WASHINGTON,

       Defendant-Appellant.

UNPUBLISHED
November 9, 2021

No. 352408
Berrien Circuit Court
LC No. 2018-002573-FC

Before: MURRAY, C.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions following a jury trial of one count of assault with intent to murder, MCL 750.83; one count of second-degree murder, MCL 750.317; and two counts of carrying or possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to serve concurrent terms of 18 to 50 years' imprisonment for the conviction of assault with intent to murder and 31 to 75 years' imprisonment for the second-degree murder conviction, and 2 years' consecutive imprisonment for each felony-firearm conviction to be served concurrently with each other. We affirm.

This case stems from the shooting of Joseph Tyson and Robert White that took place at Edgecumbe Park, in Benton Harbor, during the early-morning hours of July 1, 2018. Tyson died as a result of a gunshot wound, and White was hospitalized as a result of two gunshot wounds.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant's first claim of error is that there was insufficient evidence to sustain his second-degree murder conviction for the death of Tyson. We disagree. We review de novo defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

When reviewing the sufficiency of the evidence, this Court reviews the evidence presented at trial to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). This Court views all evidence, including both direct and circumstantial evidence, in

the light most favorable to the prosecution. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citation omitted). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). It is for the fact-finder, and not this Court, to determine what inferences can be fairly drawn from the evidence and to determine the weight that should be given to those inferences. *Hardiman*, 466 Mich at 428. The prosecutor is not required to negate every reasonable theory of innocence, but is only required to prove his or her own theory beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant argues that there was insufficient evidence to support his conviction of second-degree murder for the death of Tyson. Defendant maintains that there were five shooters at Edgecumbe Park in the early-morning hours of July 1, 2018, and that only one witness, Steven Cobb, testified that defendant fired any shots. Defendant concludes that the evidence that defendant shot Tyson does not rise above a scintilla of evidence and is therefore insufficient.

To prove second-degree murder, the prosecution must show that there was a death, that death was caused by an act of defendant, the defendant acted with malice, and the defendant did not have lawful justification or excuse for causing that death. *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). Defendant alleges that the prosecutor has not provided sufficient evidence that Tyson's death was caused by an act of defendant, the second element required to prove second-degree murder.

Initially, it should be noted that defendant misstates the evidence. In his brief, defendant states that Cobb was the only witness who testified that defendant was one of the shooters. This is incorrect. White testified that he "looked towards Tarri and 'boom,' he shot me. I turn around and he shot me in the leg." Jaber Ellis also provided testimony that he saw something silver in defendant's hand, saw a flash come from that object, and heard a gunshot. Thus, defendant's assertion that Cobb was the only person to testify that defendant was one of the shooters is contrary to the evidence admitted at trial.

Defendant argues that there was no physical evidence or direct evidence admitted at trial that defendant shot Tyson. The prosecutor acknowledged this to be true in his closing argument. However, there was circumstantial evidence admitted at trial that could convince a reasonable fact-finder beyond a reasonable doubt that defendant shot Tyson. White testified that, while he was standing within feet of both defendant and Tyson, White heard a gunshot, heard Tyson say "uh" like Tyson was hurt, and then Tyson took off running. Immediately afterward, White turned toward defendant and saw defendant holding a gun and pointing it at White.

Defense counsel attacked White's credibility at trial. However, witness credibility and the weight to give the evidence is for the jury to decide, and this Court will not interfere with the jury's determination on those issues. See *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992). Additionally, the inferences that can reasonably be drawn from the evidence and the weight to give those inferences is also for the jury to decide. See *Hardiman*, 466 Mich at 428. If the jury found White to be a credible witness, the jury could reasonably infer from White's testimony that it was defendant who shot Tyson. See *Carines*, 460 Mich at 757 (holding that circumstantial evidence

and the reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime). Additionally, the prosecution was only required to prove its theory of guilt beyond a reasonable doubt, and it was not required to negate every reasonable theory of innocence. See *Nowack*, 462 Mich at 400. The prosecution, therefore, did not need to negate the possibility that Tyson was shot by someone other than defendant during the shootout, but merely needed to prove beyond a reasonable doubt that it was defendant who shot Tyson.

White's testimony, when viewed in the light most favorable to the prosecution, is sufficient to prove beyond a reasonable doubt that the first shot fired by defendant struck Tyson, and the autopsy revealed that Tyson was killed by a single gunshot wound. Considering this evidence, a rational trier of fact could find that the essential elements of the charge of second-degree murder for the death of Tyson were proven beyond a reasonable doubt.[1]

## II. SLEEPING JUROR

Defendant's second claim of error is that his right to a fair and impartial jury was violated because a juror was observed to be sleeping during part of the trial. We disagree.

To preserve the issue of juror misconduct, a defendant must raise the issue in a motion for a new trial or in a motion for an evidentiary hearing. See *People v Benberry*, 24 Mich App 188, 191-192; 180 NW2d 391 (1970). At trial, defense counsel requested a bench conference to alert the trial court that a juror was asleep. In the bench conference that followed, defense counsel said that he just wanted to bring the sleeping juror to the trial court's attention, and suggested that they take a brief break. Much of the rest of what was said in the bench conference by the trial court, defense counsel, and the prosecution was not captured in the transcript. Although defense counsel noted to the trial court that a juror was sleeping, defense counsel did not move on the record for a new trial or for an evidentiary hearing. Defendant's claim of juror misconduct is, therefore, unpreserved.

Constitutional issues, including the right to a fair trial, are ordinarily reviewed de novo. *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). However, if an appeal of juror misconduct is not preserved, it is reviewed for plain error affecting the defendant's substantial rights. *People v Milstead*, 250 Mich App 391, 402; 648 NW2d 648 (2002). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

Defendant argues that the sleeping juror was unable to exercise the powers of reason and judgment because she was asleep, and the trial court had a duty to dismiss that juror. Because the juror was not dismissed, defendant maintains that the trial, and the resulting convictions, are tainted and must be overturned.

---

[1] Although defendant only disputes the "identity" element of second-degree murder, we conclude that the remaining elements of that offense were also established beyond a reasonable doubt.

By notifying the trial court of the sleeping juror during the bench conference, but failing to move for a mistrial or the disqualification of that juror, defense counsel arguably consented to the sleeping juror remaining on the jury, which would extinguish this claim of error. See *People v Carter*, 462 Mich 206, 217-218; 612 NW2d 144 (2000). However, given the fact that the bench conference in the trial transcript is so incomplete, we cannot conclude based on the record that defendant waived this issue.

Even if the alleged juror misconduct did occur, it does not warrant a new trial unless the party seeking the new trial can show that the misconduct was such as to affect the impartiality of the jury or disqualify it from exercising the powers of reason and judgment. *People v Dunigan*, 299 Mich App 579, 586; 831 NW2d 243 (2013). In the event that a juror is observed to be asleep, it is not sufficient for defendant to make a bare assertion that the sleeping juror could not fairly and competently consider the charges and therefore was not qualified to give a verdict. *Id*. Instead, the defendant must articulate how he or she was prejudiced by the sleeping juror. *Id*.

It is unclear from the record what, if any, testimony the juror missed, because it is unclear how long the juror was sleeping. The bench conference occurred at 2:27 p.m., which was 53 minutes after a break in the trial. There is no indication in the transcripts that any juror was sleeping at any other time during the trial. During the time between that break and the bench conference, the prosecution was presenting its case-in-chief. Specifically, the prosecutor was questioning Sergeant Chartrand regarding his investigation of the crime scene.

This Court previously has concluded that a sleeping juror is not egregious enough to warrant a finding of juror misconduct. *Id*. This Court in *Dunigan* noted that only one juror had been observed to be sleeping, and there was no indication of what, if any, testimony the juror missed. *Id*. In the instant case, the juror could have been sleeping from anywhere up to 53 minutes during Sergeant Chartrand's testimony but, unfortunately, the record does not indicate for how long.

Additionally, this Court has rejected the argument that a sleeping juror necessarily prejudices a defendant. *Id*. Like the defendant in *Dunigan*, defendant in the instant case has failed to articulate how the sleeping juror prejudiced him and has merely made a bare assertion that he was prejudiced because the juror was sleeping. See *id*. Indeed, given that the juror was asleep during a portion of the prosecution's case-in-chief, any testimony that the juror missed was presumably favorable to the prosecution, not defendant.

Based on the record of the trial, defendant has failed to demonstrate that the juror at issue could not fairly and competently consider the charges against defendant and, therefore, has failed to demonstrate that the juror was not qualified to give a verdict. See *id*. It was not plain error for the trial court to keep this juror on the jury. See *Carines*, 460 Mich at 763.

## III. PROSECUTORIAL ERROR

Defendant's third claim of error is that the prosecutor committed error during his closing argument.[2] We disagree.

To preserve a claim of error involving prosecutorial error, a defendant must contemporaneously object and must request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not object to the alleged prosecutorial error at issue in this appeal. This claim is, therefore, unpreserved.

We generally review a claim of prosecutorial error de novo to determine whether defendant was denied a fair trial. See *Dunigan*, 299 Mich App at 588. However, when a claim of prosecutorial error is unpreserved, we review the claim for plain error affecting substantial rights. See *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013).

Claims of prosecutorial error are reviewed on a case-by-case basis. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). The defendant bears the burden of proving that he was denied a fair and impartial trial. *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). When a claim of prosecutorial error is based on a prosecutor's statements, those statements must be analyzed in context to determine if the defendant was denied a fair trial. *Mullins*, 322 Mich App at 172. The prosecutor's statements must be analyzed in light of the defense arguments and the relationship between the prosecutor's statements and the evidence admitted at trial. *Id*. In closing argument, prosecutors are generally given great latitude and are free to argue the evidence and all reasonable inferences from the evidence. *Id*. However, "[a] prosecutor may not make a factual statement to the jury that is not supported by the evidence." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). A prosecutor also may not imply or assert that defense counsel is intentionally trying to mislead the jury. *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001).

When a claim of prosecutorial error is unpreserved, this Court only will review the alleged error "if a curative instruction could not have remedied the prejudicial effect of the prosecutor's comments or if the failure to consider the issue would result in a miscarriage of justice." *People v Mayhew*, 236 Mich App 112, 122-123; 600 NW2d 370 (1999); see MCL 769.26. "A miscarriage of justice will not be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *Mayhew*, 236 Mich App at 123. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

Defendant argues that three comments the prosecutor made during his closing argument constituted prosecutorial error. First, defendant argues that the prosecutor erred when he said that "there was no mention of lying in that first police report" of White's interview with police officers. The prosecutor made this comment in response to defense counsel's argument that White lied to police officers and therefore that the jury should not believe White's testimony. During the trial,

---

[2] "[A] more accurate label for most claims of prosecutorial misconduct is 'prosecutorial error,' while only the most extreme cases rise to the level of 'prosecutorial misconduct.' " *People v Caddell*, 332 Mich App 27, 71 n 10; 955 NW2d 488 (2020).

White testified explicitly that he lied to police officers in the first interview, which was conducted on July 2. During cross-examination, White testified as follows:

> *Q.* So, at first you lied to the police 'cause you wanted to take out revenge on people; correct?
>
> *A.* Correct.

In light of White's testimony, the prosecutor made a factual statement not supported by the evidence when he stated that there was no mention of White lying to police in the first interview. Prosecutors are not allowed to make a factual statement not supported by the evidence. See *Dobek*, 274 Mich App at 66. However, the prosecutor's statement did not result in a miscarriage of justice. On at least two occasions, the trial court instructed the jury that the arguments made by the lawyers were not evidence and that the jury may only consider evidence that has been properly admitted when reaching a verdict. Moreover, the comment in question was fleeting and not emphasized by the prosecutor. Because jurors are presumed to follow the instructions provided, the jury in this case is presumed to have based their verdict on White's testimony, and not the prosecutor's brief misstatement of White's testimony. See *People v Stevens*, 498 Mich 162, 177; 869 NW2d 233 (2015).

Additionally, most inappropriate prosecutorial statements are able to be cured by an instruction from the court. See *Seals*, 285 Mich App at 22. Had a timely objection been made in this case, the trial court could have provided a curative instruction regarding the prosecutor's misstatement of the evidence. As such, a miscarriage of justice has not resulted from the prosecutor's statement regarding White's truthfulness in the first interview with police. See *Mayhew*, 236 Mich App at 123.

Defendant next argues that the prosecutor committed error when he said that the medication White received in the hospital "play things with your memory." The prosecutor went on to say that a doctor testified that the medication wore off after 12 hours, and White's interview with police officers occurred after that. The prosecutor made these comments as he was describing the events White had experienced before his July 2 interview with police which might have colored White's memory.

The prosecutor's factual statement that the medication White received at the hospital could have affected White's memory is supported by the evidence at trial. What defendant claims to be prosecutorial error is the implication that the effects of this medication, which the prosecutor noted had already worn off by the time White spoke with police officers, could have impacted White's memory during his interview with police officers.

The implication that the medication White received at the hospital could have impacted his memory when White spoke to police is not supported by the evidence at trial. However, that implication did not impact the outcome of the trial. Because White testified that he knowingly lied to police, his memory when he spoke to police officers was not at issue. It is, therefore, unclear how an unsupported factual implication from the prosecutor that White's memory was impaired when he spoke to police officers could have impacted the outcome of the trial.

Finally, defendant argues that the prosecutor committed error when the prosecutor told the jury that defense counsel's arguments were "red herrings" intended to put the jury off. In his closing argument, defense counsel discussed what he argued was inconsistent testimony from White and Cobb regarding defendant's shorts, hat, and hairstyle at the time of the shooting. In his rebuttal, the prosecutor said that defense counsel was discussing shorts and hairstyles because defense counsel was going to use "any red herring you can throw out there to put you off."

This Court has previously addressed a prosecutor's use of the term "red herring" to describe defense counsel's argument. In *Watson*, 245 Mich App at 592, this Court found the prosecutor's comments to be improper when the prosecutor said, among other things, that defense counsel had thrown "a whole boatload of red herrings" at the jury. However, *Watson* went on to state that such an "otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *Id*. at 593. In *Dobek*, this Court found that the prosecutor's description of defense counsel's argument as "red herrings" did not generate the type of accusatory prejudice that was previously held to be improper. *Dobek*, 274 Mich App at 67.

In the instant case, the prosecutor's description of defense counsel's argument as a "red herring" does not amount to prosecutorial error. Considered in context, the comment was brief and did not personally disparage defense counsel. In fact, it credited defense counsel for representing his client. Defendant has not shown that the prosecutor's "red herring" comment amounted to the type of accusatory prejudice that has previously been held to be improper.

Additionally, this Court in *Dobek* also held that, even if the prosecutor's "red herring" comments were improper, any prejudicial effect could have been cured by a timely instruction, and therefore reversal was not warranted. *Id*. at 68. When the prejudice of the prosecutor's comments could have been cured by a timely instruction, a miscarriage of justice will not be found. *Mayhew*, 236 Mich App at 123. As such, a miscarriage of justice has not resulted from the prosecutor's "red herring" comment in this case.

Defendant has not shown that any of the three alleged instances of prosecutorial error amounted to plain error which would warrant a new trial.

## IV. INEFFECTIVE ASSISTANCE

Defendant's fourth claim of error is that he was provided ineffective assistance of counsel in six different instances at trial. We disagree.

To preserve the issue of ineffective assistance of counsel, defendant must move for a new trial or a *Ginther*[3] hearing. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). On appeal, defendant moved to remand to the trial court for a *Ginther* hearing. This Court conditionally denied the motion "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v*

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*Washington*, unpublished order of the Court of Appeals, entered May 19, 2021 (Docket No. 352408).[4] This issue has been preserved.

Whether defendant is entitled to a new trial because he received ineffective assistance of counsel is a mixed question of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews the trial court's findings of fact for clear error, while it reviews questions of law de novo. *Id*. When there has been no evidentiary hearing held below, this Court's review is limited to mistakes that are apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012).

To prevail on a claim of ineffective assistance of counsel, defendant must demonstrate that (1) defense counsel's representation fell below an objective standard of reasonableness, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different." *Strickland v Washington*, 466 US 668, 688, 692-694; 104 S Ct 2052; 80 L Ed 674 (1984).

The first prong of the *Strickland* test is whether defense counsel's representation "fell below an objective standard of reasonableness." See *id*. at 688. When analyzing whether defense counsel's representation fell below an objective standard of reasonableness, defense counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690; see also *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). The reviewing court should make this determination in light of all the circumstances. *Vaughn*, 491 Mich at 670. The reviewing court should "affirmatively entertain the range of possible reasons counsel may have had for proceeding as they did." *Id*. (quotation marks, citation, and alteration omitted). Defense counsel's conduct does not fall below an objective standard of reasonableness if the court can conceive of a legitimate strategic reason for that conduct. See *People v Clark*, 330 Mich App 392, 427; 948 NW2d 604 (2019). "Trial counsel is not required to advocate a meritless position." *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

The second prong of the *Strickland* test is whether defendant has suffered prejudice because of defense counsel's performance. See *Strickland*, 466 US at 694. Defendant has the burden of affirmatively proving prejudice. See *id*. at 696. Defendant must prove that, "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." See *Trakhtenberg*, 493 Mich at 51.

Defendant first argues that his defense counsel was ineffective when he did not move for a mistrial or move for the disqualification of the sleeping juror. We disagree.

This Court has previously addressed whether a defense counsel's failure to move to disqualify a sleeping juror constitutes ineffective assistance of counsel. See *Dunigan*, 299 Mich App 579. In *Dunigan*, this Court found that the defendant did not establish that a sleeping juror "affected the outcome of the proceedings." *Id*. at 586. *Dunigan* noted that the testimony the juror may have missed while asleep was that of a witness for the prosecution, and that defense counsel

---

[4] For the reasons explained herein, we once again conclude that a remand is unnecessary.

could reasonably have made a strategic decision that the juror missing that testimony could have helped the defense. *Id*. at 586-587. *Dunigan* also rejected the argument that a defendant is necessarily prejudiced by a sleeping juror, and instead required defendant to articulate how the sleeping juror prejudiced the defendant. *Id*. at 586.

Here, defense counsel notified the trial court that a juror was sleeping at 2:27 p.m. on the second day of trial, during the testimony of Sergeant Chartrand, an evidence technician who was testifying about his investigation of the crime scene. Defense counsel informed the trial court that he saw the juror sleeping, but defense counsel did not move to disqualify the juror or move for a mistrial.

Like in *Dunigan*, defendant in the instant case has not overcome the presumption that defense counsel acted reasonably when he decided not to move for a mistrial or the disqualification of the juror after he observed that juror sleeping during the testimony of one of the prosecution's witnesses. See *id*. at 586-587. Defense counsel could reasonably have made a strategic decision to assume that the juror missing that testimony would have helped the defense. See *id*. at 586-587. Defendant has, therefore, failed to satisfy the first prong of the *Strickland* test by failing to demonstrate that defense counsel's conduct was objectively unreasonable. See *Strickland*, 466 US at 688.

Defendant has also failed to show that he was prejudiced by defense counsel's conduct under the second prong of the *Strickland* test. See *id*. at 694. Like the defendant in *Dunigan*, defendant in the instant case makes bare assertions that a juror sleeping during a portion of the testimony of a witness for the prosecution necessarily prejudiced him. See *Dunigan*, 299 Mich App at 586. That is not sufficient to demonstrate a reasonable probability that the sleeping juror affected the outcome of the trial. See *id*. Defendant has therefore failed to show that he was prejudiced by defense counsel's decision not to move for a mistrial or for disqualification of the sleeping juror.

Defendant next argues that his defense counsel was ineffective for failing to object to the prosecutor's statements made during closing argument which defendant argues amounted to prosecutorial error. We disagree.

When a claim of ineffective assistance of counsel is based on a failure to object to the prosecutor's comments made during closing argument, this Court has found that the prejudice of the prosecutor's comments can be alleviated by the trial court's instruction to the jury that the case is to be decided on the evidence and that the comments of counsel are not evidence. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). Additionally, declining to raise objections, especially during closing arguments, can often be consistent with sound trial strategy. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *Id*. at 242-243.

Defendant alleges that the prosecutor committed error when he: (1) argued that the statements White made during police interviews, at a preliminary hearing, and at trial were consistent and that White did not lie to police officers; (2) implied that the medication White

received in the hospital could have impacted his memory when he spoke with police officers on July 2; and (3) told the jury that defense counsel was using red herrings to confuse the jury.

Regarding the first instance of alleged prosecutorial error, as stated earlier, the prosecutor did misstate the evidence when he said that there was no mention at trial that White lied to police in the first interview. Defense counsel did not object to the prosecutor's comments regarding White's consistency, but he did spend time in his closing argument addressing the credibility of White and inconsistencies in White's testimony and previous statements. Defense counsel's decision to address this issue in his own closing, instead of objecting to the prosecutor's closing, was trial strategy, and this Court will not substitute our judgment for that of defense counsel on matters of trial strategy. See *id*. Defendant has not overcome the strong presumption that defense counsel was reasonable when he decided to make his own arguments about White's inconsistencies and credibility instead of objecting to the prosecutor's argument on that issue. See *id*. at 243. Additionally, any prejudice that may have resulted from the prosecutor's misstatement of the evidence was alleviated by the trial court's instruction that the prosecutor's statements were not evidence and that the jury needed to decide the case solely on the evidence. See *Thomas*, 260 Mich App at 457.

Likewise, defendant's argument that his defense counsel was ineffective for failing to object to the prosecutor's statements regarding the impact the medication had on White's memory also is not persuasive. Defense counsel's decision to argue in his own closing argument that White was a liar and that White's statements are not credible, and to forgo an objection to the prosecutor's argument on that issue, is a matter of trial strategy that is strongly presumed to be sound. See *Unger*, 278 Mich App at 243. Defendant has not overcome this strong presumption. Additionally, any prejudice that may have resulted from the prosecutor's misstatement of the evidence was alleviated by the trial court's instruction that the prosecutor's statements were not evidence and that the jury needed to decide the case solely on the evidence. See *Thomas*, 260 Mich App at 457.

Finally, defense counsel was not ineffective for failing to object to the prosecutor's "red herring" comment. As described above, this Court has previously rejected the argument that the prosecutor referring to defense counsel's argument as a "red herring" is necessarily prosecutorial error. See *Dobek*, 274 Mich App at 67. Regardless, this comment from the prosecutor was brief and incidental, and an objection might have unnecessarily drawn the jury's attention to it. Declining to raise objections can often be consistent with sound trial strategy, as in this case. See *Unger*, 278 Mich App at 242.

Accordingly, defense counsel was not ineffective for failing to object to any of the three alleged instances of prosecutorial error.

Defendant next argues that his defense counsel was ineffective when he did not object to the admission of testimony by White that defendant robbed White's friend. We disagree.

At trial, during his direct examination by the prosecution, White testified that defendant robbed White's friend, Robert Lee. Although some evidence of defendant's prior acts had already been deemed admissible by the trial court, evidence of defendant's alleged robbery of Lee was not previously discussed or deemed admissible.

Defense counsel did not object to White's testimony that defendant robbed Lee, but defense counsel did question White about that alleged robbery of Lee on cross-examination. In that questioning, defense counsel asked White about whether he was seeking revenge against defendant for the robbery of Lee. Even assuming that the testimony regarding the Lee robbery was inadmissible prior-acts evidence, see MRE 404(b), defendant has not overcome the strong presumption that it was sound trial strategy for defense counsel not to object to the testimony regarding the robbery of Lee, and instead to cross-examine White regarding that testimony. In other words, a legitimate trial strategy would have been to use the alleged robbery to undermine White's credibility. See *Unger*. 278 Mich App at 243. To the extent that defense counsel's strategy to cross-examine White regarding the Lee robbery instead of objecting to direct testimony regarding the Lee robbery was unsuccessful, that trial strategy is not ineffective because it is unsuccessful. See *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). Thus, we conclude, defense counsel was not ineffective for not objecting to White's testimony regarding defendant robbing Lee.

Defendant next argues that his defense counsel was ineffective when he did not request a jury instruction limiting White's prior-act testimony to the charge that defendant shot White. We disagree.

A party may request a limiting instruction when evidence of other acts is presented under MRE 404(b). *People v Rice (On Remand)*, 235 Mich App 429, 444; 597 NW2d 843 (1999). Defense counsel's decision to request a limiting instruction is a matter of trial strategy. *Id.* at 444-445. Defense counsel's decision not to request a limiting instruction will be deemed to constitute ineffective assistance if that instruction pertains to a basic and controlling issue in the case. See *People v Ortiz*, 249 Mich App 297, 312; 642 NW2d 417 (2001). Cautionary instructions are advisable but not mandatory. *Id*.

Before trial, the prosecutor moved to admit evidence of an altercation between White and defendant that happened before the shooting. The prosecution sought to admit that evidence to prove motive, intent, premeditation, and deliberation in the shooting of both White and Tyson. The trial court granted the motion.

Defendant argues that defense counsel should have requested an instruction limiting the jury's use of White's testimony to the charge that defendant shot White. But the trial court ordered that this evidence was admissible as to both charged shootings; the trial court did not limit the purpose of this evidence solely to the charge that defendant shot White. It would be meritless for defense counsel to request a jury instruction limiting the jury's use of White's testimony when the trial court had already ruled that White's testimony was not limited in that manner. Defense counsel is not required to advocate for a meritless position and, therefore, was not unreasonable. See *Snider*, 239 Mich App at 425.

Defendant next argues that defense counsel was ineffective when he did not make an argument about defendant's lack of motive to shoot Tyson. We disagree.

The prosecution argued that defendant's motive for shooting Tyson was that Tyson was a friend of White, who was defendant's enemy. This argument is not inherently illogical. Defense counsel's decision not to discuss the motive that the prosecutor argued defendant had for shooting

Tyson was trial strategy which is presumed to be sound. Defense counsel could have decided that there were other, more important aspects of the case that he wanted to highlight for the jury in closing argument. Defense counsel therefore may have felt that spending time discussing the prosecution's theory regarding defendant's motive to shoot Tyson, which was not an element second-degree murder and not something the prosecution was required to prove, would detract from the other arguments he wanted to make on closing argument. See *Clark*, 330 Mich App at 427 (holding that this Court could not conclude that defense counsel's conduct fell below an objective standard of reasonableness because the court could conceive of a legitimate strategic reason for that conduct). It was not unreasonable for defense counsel not to address motive in closing argument. Therefore, defendant has not shown that defense counsel was ineffective for not discussing in closing argument the prosecution's theory regarding defendant's motive to shoot Tyson.

Finally, defendant argues that defense counsel was ineffective for failing to capitalize on a statement made by the prosecutor during closing arguments that defendant believes contradicts the prosecution's theory of guilt for the shooting of Tyson. We disagree.

Defendant argues that the prosecutor's statement that the first shot "whizzed by" White's head contradicted the prosecution's theory of the case, which was that the first bullet struck Tyson. The specific comment defendant identified was made by the prosecutor in his rebuttal closing argument.[5] Therefore, defense counsel did not have the opportunity to make an argument on that allegedly contradictory statement from the prosecutor because defense counsel is not entitled to make a rebuttal to the prosecution's rebuttal closing argument. See MCR 2.513(L); MCR 6.001(D). In other words, there was no way for defense counsel to capitalize on a possibly favorable statement by the prosecutor during rebuttal. See *Snider*, 239 Mich App at 425 (holding that defense counsel was not ineffective for failing to object when that objection would have been meritless).

Furthermore, contrary to defendant's argument, the prosecutor's statement does not contradict the prosecutor's theory of the case. The prosecutor's theory of guilt was that the first bullet shot by defendant went past White and struck Tyson. The prosecutor made this point in his opening statement, stating that White "heard the first shot that whizzed by his head and hit [Tyson]." The prosecutor's opening statement shows that his theory of the case was that the first shot whizzed by White's head and then hit Tyson, which is consistent with the prosecution's theory that the first shot fired by defendant hit and killed Tyson. It would be meritless for defense counsel to point out a contradiction in the prosecutor's theory that does not exist, and defense counsel is not required to advocate for a meritless position. See *id.* at 425. Defense counsel was not ineffective for failing to argue that the prosecutor's statement that the first shot "whizzed by" White was contradictory.

---

[5] The prosecutor also stated that the first shot "whizzed" by White in the prosecutor's opening statement and initial closing argument, but defendant did not identify those comments as being contradictory to the prosecution's theory of guilt.

## V. CONCLUSION

There were no errors warranting relief.  We affirm.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Michael J. Riordan